# Rhodes, Appellant, *v.* Rhodes.

*Gift—Husband and wife—Evidence—Competency of witness.*

A mother, a few days before her husband's death, gave to her son for safe keeping a sum of money, the son receipting for it as " money received by her from father." The son was one of his father's executors. The mother in an action against the son to recover the money after detailing the circumstances under which she gave the money to her son, testified on cross-examination that her husband gave it to her about four weeks prior to his death, and told her that he wanted her to keep it for she would need money before she would get any from the estate. The son alleged that the money belonged to his father's estate. It appeared that the executors did not include this sum in their account, but that in proceedings in the orphans' court they were surcharged with the amount. The widow was neither a party nor a privy to these proceedings, nor did she have any notice of them, having previously, for a fixed sum, released all her interest under the will. *Held* (1) that as the mother's testimony as to the gift was brought out by cross-examination, and as no motion was made to strike it out on the ground that it was not responsive to the questions, and as the testimony was relevant to the issue, the court could not on its own motion strike it out, or withdraw it from the consideration of the jury; (2) that the admission of the mother that the money originally belonged to her husband was so interwoven with her testimony as to the gift of it to her, that the court would not have been justified in retaining that part of her testimony which bore in the defendant's favor, and rejecting that part which bore in her own favor; (3) that the testimony of plaintiff in chief coupled with the prima facie presumption of ownership arising from possession, was sufficient to carry the case to the jury; (4) that the plaintiff was not estopped by the proceedings in the orphans' court; (5) that the court below erred in not submitting the case to the jury.

Argued May 9, 1901. Appeal, No. 171, April T., 1901, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., June T., 1900, No. 275, on verdict for defendant in case of Sarah E. Rhodes *v.* S. O. Rhodes. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit to recover money entrusted to another for safe keeping. Before BROWN, J.

The facts are fully stated in the opinion of the Superior Court.

The court gave binding instructions for defendant, on the ground that plaintiff was barred by the proceedings in the orphans' court.

*Error assigned* was in giving binding instructions for defendant.

*Frank M. McKelvey*, with him *Joseph A. McDonald*, for appellant, cited: McBride's App., 72 Pa. 484; Ryan's Est., 35 Legal Int. 431; Robinson's Est., 12 Phila. 170; Schwan v. Kelly, 173 Pa. 65.

*Joseph R. McQuaide*, for appellee.

OPINION BY RICE, P. J., October 14, 1901:

This was an action of assumpsit brought to recover the sum of $600, which, it was alleged and not denied, was placed in the defendant's hands by the plaintiff. It appeared on the trial that Frederick Rhodes, the husband of the plaintiff and father of the defendant, was possessed of a considerable estate, and by his will appointed the defendant one of his executors. The plaintiff testified that a few days before the death of her husband she gave the defendant $600 for safekeeping, he at the same time giving her this receipt:

"May 13, 1895.

"Received of Mrs. Sarah Rhodes six hundred dollars, money received by her from father.

(Signed)      "S. O. RHODES."

She testified as follows: "Why, he knew that I had the money in the house and he came to me before daylight one morning, and told me I had better give him that money, and let him put it in trust, and I thought he said in the bank, for me, for fear that something would happen and the money would be lost, and I gave it to him." Upon cross-examination, in answer to the question "whose money was this," she testified: "Mr. Rhodes gave it to me about four weeks previous to his death, and told me that he wanted me to keep it for I would need money before I would get any from the estate."

The defendant alleged that the money did not belong to her but to his father, by whose direction she handed it to him, the defendant. If the case turned upon the credibility of the witnesses it was clearly for the jury. It has been suggested, however, that she admitted that the money originally belonged to

her husband, and that she was an incompetent witness to prove the gift to her, therefore the court was justified in giving binding instructions in defendant's favor.    There are two sufficient answers to this suggestion : First, the testimony as to the gift was brought out by the defendant's cross-examination, and no motion was made to strike it out upon the ground that it was not responsive to the question.    Such being the case, and the testimony being relevant to the issue, the court could not, of its own motion, strike it out, or withdraw it from the consideration of the jury : Lewars v. Weaver, 121 Pa. 268.    Second, the admission that the money originally belonged to her husband was so interwoven with her testimony that he gave it to her that the court would not have been justified in retaining that part of her testimony which bore in the defendant's favor and rejecting that part which bore in her own favor.    But if, as a whole, her testimony upon cross-examination had been stricken out, her testimony in chief, coupled with the prima facie presumption of ownership arising from possession of the money, would have been sufficient to carry the case to the jury.    We are not prepared to say that in the issue being tried she was an incompetent witness to prove the gift to her.    Be that as it may, as the case was presented when the evidence closed, she was entitled to have the question whether she or her husband was the owner of the money, submitted to the jury, unless the decree of the orphans' court was such an adjudication of that question as concluded her.    The question of res judicata arises in this way.    It will be important to notice the dates.    On October 26, 1896, the executors filed their first and partial account, in which they omitted to charge themselves with the $600 received by the defendant from the plaintiff, which he now claims was the money of his father, the testator.    According to his present contention he was derelict in not charging himself with it.    On December 14, 1896, the plaintiff, as widow, filed exceptions to certain credits claimed in the account, but made no allusion whatever to the $600.    On April 26, 1897, two daughters of the testator also filed exceptions, and amongst them one in which they excepted to the omission of the executors to charge themselves " with $600 in cash on hand at date of death of decedent, and received and receipted for by said executors." On May 25, 1897, the audit was had and on the same day the

orphans' court made a decree surcharging the accountants with the sum of $600, "amount received by S. O. Rhodes from widow." It does not appear that the plaintiff was present or was represented at the audit. In the mean time, namely, on May 20, 1897, five days before the audit, she executed and delivered to the executors a paper in which she acknowledged the receipt from them of the sum of $2,000, in consideration whereof she released the executors, the estate and the legatees under the will from the payment (quoting the language of the release) "of all such sum or sums of money, share or share, purparts and dividends which were due, owing, payable and belonging to me, by any means whatsoever for or on account of my full share, part or dividend of the personal estate of my said husband deceased." This was a release of her rights under the will and as widow, not of her claim against the defendant personally. It will be observed that the exception filed by the daughters was not so worded as to give the plaintiff notice that the $600 referred to therein was the identical money that she had deposited with the defendant before the death of the testator, and it does not appear that she had notice in any other manner that her ownership of the money was contested. Moreover, having given the release above referred to, she had no occasion to be present at the audit, and if she had been present would have had no standing to enforce payment of her claim. At that time she was neither party nor privy to the proceeding to surcharge the executors, and, therefore, was not precluded by the record thereof from asserting and enforcing in the proper forum her claim against the defendant as an individual. Nor, so far as we can discover from an examination of the evidence before us, was she estopped by matter in pais. We conclude therefore that there was error in withdrawing the case from the jury.

Judgment reversed and venire facias de novo awarded.